DUCKER, JUDGE:
The claimant, Helen I. Wotkiewicz, a former student at West Virginia University, alleges that for the second semester 1967-1968, the first semester 1968-1969, second semester 1968-1969 and the summer session 1969, she was required to pay non-resident tuition fees while she was a full-time student at the University, which fees exceeded the resident fees in the total sum of $1258.00, and upon her contention that she was legally a resident of West Virginia during the period she was so required to pay said non-resident fees, she now claims she is entitled to be refunded the amount of such excess payment. The issue is whether the claimant was legally a resident of West Virginia who was obligated to pay only resident student tuition and fees.
The payment of the fees on a non-residency basis was made under protest and appeals were presented to the Residency Committee of the University and denied. However, claimant was awarded residency status for the first semester of 1969-1970 and excess tuition and fees for that semester were refunded. It would seem to appear that one reason the Residency Committee may have refused to order refund for previous semesters was because of fiscal year budgetary restrictions.
The Regulations of the University contain in Section 7-A-l the following provision:
“No person shall be considered eligible to register in the University as a resident student who has not been domiciled in the State of West Virginia for at least twelve consecutive months next preceding college registration. *156 No non-resident student may establish domicile in this State, entitling him to reductions or exemptions of tuition, merely by his attendance as a full-time student at any institution of learning in the State. * * *”
The evidence discloses the following undisputed facts.
Claimant while a resident of Pittsburgh, Pennsylvania, was secretary to Dr. Ernest Vargas, director of a research project at the University of Pittsburgh, from June 1963 until August 1966 when the research project ended and claimant’s employment then ceased. Dr. Vargas then accepted a position as a professor at West Virginia University, and as he and his wife and claimant had become close friends, he suggested to claimant that she seek employment at Morgantown where the Var-gases were moving. Claimant thereupon applied for a position and was employed as a secretary to Dr. Bernard Scher, Director of the Division of Social Workers in Morgantown, on a full-time basis beginning in August 1966. Having taken a few courses of a general academic nature at the University of Pittsburgh, claimant was encouraged by her employer, Dr. Scher, to use her otherwise noon hour recess time to take part-time courses at West Virginia University. In the fall of 1967, Dr. Scher became seriously ill, after which he took a position at Florida State University, which meant to claimant a change in the personnel of her employer. Claimant concluded she was tired of being a secretary and decided then that it was a good time for her as she said “move out of the secretary slot and start wrapping up my education — and to begin taking classes on a full-time basis”. She further said that as she was becoming interested in social work and social studies, she enrolled as a full-time student in January 1968, when she was over 22 years of age.
Other pertinent facts are that the claimant after beginning her employment- in August 1966 as a secretary in Morgantown lived there the year round continuously thereafter, returning to see her parents in Pittsburgh only on occasional visits. For a month she lived with the Vargases until she found an apartment, and thereafter shared an apartment with another young girl who was teaching and a graduate student at the University. She got a West Virginia driver’s license in the fall of 1966, and she filed resident returns and paid West Virginia income *157 taxes for the years 1967 and 1968, showing her residence to be Morgantown. Although the claimant testified that she had no future plans as to where she expected to live in the future or where she expected to be employed, there is nothing in her testimony to indicate any domicile or residence remaining in Pittsburgh. On the contrary, her residency in Pennsylvania appears to have been completely terminated when she moved to Morgantown and became Dr. Scher’s secretary.
From the above facts it is necessary to see if the Residency Regulation heretofore quoted is sufficiently applicable to this case as to justify the non-residency tuition and fees charged against claimant for the semesters in question.
The regulation prohibits anyone who has not been a resident of the State for at least a year from being eligible for residency status and that such one year residency status cannot be obtained merely by being a full-time student. The facts clearly indicate that claimant became a bona fide resident of Morgantown when she accepted and entered upon full-time employment as a secretary at the University, taking only part-time courses in lieu of the time she would have had for her noon hour recess, and that she did not become a full-time student until she registered in December 1967 as such, a year and five months after she moved to Morgantown.
The provision in the Regulations is a necessary and valid one, and should be enforced where the facts are in accordance with its specified restrictions, but not where they are not within its terms, as in the case before us.
In view of all the facts, we are of the opinion that claimant having moved to Morgantown and engaged in full-time employment there with no purpose evident except to make her home there indefinitely, constituted an establishment by her of a legal domicile there and that her residency meets the requirements of the regulations of the Residency Committee, and that she should have been charged only resident tuitions and fees.
Accordingly, we are of the opinion that the claimant is entitled to the refund sought, and we hereby award her the sum of $1258.00.
Award of $1258.00.